IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 1:15-cv-2521-CBS

ROSLYN K. MCKELLAR,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

    This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Roslyn K. McKellar's ("Plaintiff") application for Disabled Adult Child Benefits and Supplemental Security Income. Pursuant to the Order of Reference dated April 20, 2016, this civil action was referred to the Magistrate Judge pursuant to Title 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.Colo.LCivR 72.2. *See* Docs. 19, 28, 29. The court has carefully considered the Complaint (filed November 16, 2015) (Doc. 1), Plaintiff's Opening Brief (filed March 15, 2016) (Doc. 21), Defendant's Response Brief (filed April 6, 2016) (Doc. 26), Plaintiff's Reply (filed April 18, 2016) (Doc. 27), the entire case file, the administrative record, and applicable case law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In August 2012, Plaintiff filed an application for disabled adult child benefits and supplemental security income, alleging a disability onset date of January 2, 2005. (*See* Social Security Administrative Record (hereinafter "AR") at 18, 160-61, 162-71). Plaintiff alleges she became disabled due to symptoms related to asthma, morbid obesity, an abnormal spine, anxiety, hypertension, metrorrhagia, polycystic ovaries, and dysmenorrhea. *Id*. at 198. Plaintiff was born on January 1, 1987, and was 18 years old on the date of her alleged disability onset. *Id*. at 160. She completed the eighth grade, after which she was apparently home-schooled. She testified that she never received her GED; however, the record also indicates that Plaintiff has completed some college coursework. *Id*. at 41, 52, 327 (stating that Plaintiff was a freshman in college). She has never been employed. *Id*. at 41, 199. After her initial application was denied, Plaintiff requested a hearing, which was held on May 21, 2014, before an Administrative Law Judge ("ALJ"). *Id*. at 104, 35-75.

Plaintiff was represented by her father at the hearing[1] and testified that she suffered from social anxiety, panic disorders, and depression. *Id*. at 42. She estimated that she had three to four panic attacks per month. *Id*. at 43. Plaintiff also testified that her social phobia kept her from leaving the house and made her nervous to talk to people. *Id*. at 44. She said that other than going to the grocery store with her mother, she did not go to church or meetings of any kind, she did not socialize with any friends or neighbors, and she never went anywhere alone. *Id*. at 44-46. Plaintiff also stated that when she and her parents would dine out, she would typically get her food in a to-go container and sit in the car. *Id*. With respect to her depression, Plaintiff testified that she would cry for no reason and that she would often stay in bed. *Id*. at 46.

---

[1] The ALJ informed Plaintiff of her right to be represented by an attorney. AR at 38. Plaintiff chose to have her father represent her. *Id*. at 38-39.

Plaintiff also testified regarding her physical ailments, which included asthma, excessive menstrual bleeding and cramping, and back pain. *Id*. at 42. She reported that even with asthma medication, she still had trouble breathing and that she would get tired after only minimal movement. *Id*. Regarding her back pain, Plaintiff testified that the pain was constant and could be caused by anything. *Id*. at 47. According to Plaintiff, her pain could be so bad that it would cause her to stay in bed all day. *Id*. She further stated that she could only walk a few blocks and that she could tolerate standing for 10 to 15 minutes at a time. *Id*. at 50. She also said that she rarely lifted objects heavier than a remote control or a book, and that the only housework she did was washing a few dishes or wiping out the sink. *Id*. at 51.

A vocational expert ("VE") also testified at the hearing. *See Id*. at 57. The ALJ asked the VE to assume hypothetically that an individual similar to Plaintiff had the following limitations: (1) lifting 10 pounds frequently, 20 pounds occasionally; (2) standing or walking for up to six hours out of an eight hour day; (3) sitting for up to six hours out of an eight hour day; (4) can climb stairs, but would be limited to occasional climbing of ladders; (5) occasionally stoop and crouch; (6) avoid concentrated exposure to vibration; (7) avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation; (8) could work in a relatively clean environmental work setting; and (9) must avoid concentrated exposure to hazards such as machinery and heights. *Id*. at 58.

In response, the VE identified three "light" exertional jobs that someone with those limitations could perform and testified about the number of each of those positions in the regional and national economy: (1) small products assembler (1,460 Colorado; 118,000[2]

---

[2] The VE eroded the number of jobs available based on the need to avoid exposure to machinery and fumes. AR at 59.

3

National); (2) electronics worker (830 Colorado; 86,000 National); and (3) library clerk (230 Colorado; 15,000 National). *Id*. at 59-60.

The ALJ then posed a second hypothetical in which she asked the VE to assume that an individual — with all of the previous limitations — would be limited to sedentary exertional work. *Id*. at 60. The VE testified that, although the Dictionary of Occupational Titles did not recognize two of the previous jobs as sedentary, they actually were. *Id*. at 59-60. Under this new hypothetical, the number of small products assemblers would be eroded to 35,400 (National) and 440 (Colorado). *Id*. at 60. The VE further testified that the number of electronics workers would be eroded to 60,000 (National) and 580 (Colorado). *Id*. The library clerk position, however, would be eliminated. *Id*. The VE also identified two new "sedentary" jobs that would satisfy the ALJ's second hypothetical: (1) call out operator (185 Colorado; 11,600 National); and (2) drive-in order clerk (290 Colorado; 26,000 National). *Id*. at 62.

In the third hypothetical, the ALJ added a limitation that the individual would be limited to occasional interaction with co-workers, the public, and supervisors. *Id*. at 62. Based on this additional limitation, the VE eliminated the call out operator position as well as the drive-in order clerk position. *Id*. at 63. The ALJ then asked whether any of the surviving jobs would be affected by restricting the individual to only minimal work with co-workers, the public, and supervisors. *Id*. The VE testified that any erosion would be negligible. *Id*.

The ALJ next asked the VE to assume that the individual would be limited to a job where she (1) would need the opportunity to sit or stand at will during the course of an eight-hour day; (2) would be able to sit for up to 30 to 45 minutes at one time; (3) could stand for 15 to 20 minutes at one time; and (4) could walk two or three blocks. *Id*. at 64. The VE stated that the only job available would be a surveillance system monitor (230 Colorado; 18,000 National). *Id*.

at 64-65. When asked to assume that the limitation on social interaction was eliminated, the VE testified that such an individual could perform the aforementioned positions of call out operator and drive-in order clerk.[3] *Id*. at 65.

The ALJ then posited an individual who, under the previous limitations, would be in bed up to seven days every other month due to menstrual problems. *Id*. at 66. The VE testified that there was no competitive employment compatible with those limitations. *Id*. The VE further testified that most employers would tolerate up three to four absences every other month. *Id*.

On June 23, 2014, the ALJ issued his decision denying benefits. *Id*. at 15. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[4] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since January 2, 2005, the alleged onset date. *Id*. at 20. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: asthma, kyphosis and scoliosis of the back, obesity, menorrhagia, dysmenorrhea, and polycystic ovaries. *Id*. at 20. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 23-24.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: the claimant can lift and/or [sic] up to 10 pounds occasionally and less than 10 pounds

---

[3] Under this particular hypothetical, the VE testified that the drive-in order clerk would be eroded to 230 (Colorado) and 21,000 (National). AR at 65. The numbers for the call out operator would remain the same. *Id*. at 65-66.

[4] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> frequently; she can stand and/or walk about 2 hours in an 8-hour workday; she can sit for about 6 hours in an 8-hour workday; she can climb stairs, but is limited to occasional climbing of ladders; she can occasionally stoop and crouch; she must avoid concentrated exposure to vibrations; she could work in a relatively clean environmental work setting, but she should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; she should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.

*Id.* at 24. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ observed that many of Plaintiff's medical records were inconsistent with her claims regarding the severity of the limitations resulting from her impairments. *Id.* at 25-27. In addition, the ALJ credited the opinion of Dr. Howard Horsley, a state agency consultant, who reviewed Plaintiff's medical records and prepared a physical RFC assessment. *Id.* at 26. Dr. Horsley concluded that, despite Plaintiff's impairments, she was capable of performing full-time sedentary work. *Id.* at 26, 434-41. The ALJ also found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely credible." *Id.* at 25.

At step four, the ALJ noted that Plaintiff had no past relevant work. *Id.* at 27. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* Specifically, the ALJ found that Plaintiff could work as a small products assembler, an electronics worker, a call out operator, and a drive-in order clerk. *Id.* at 28. The ALJ also noted that even if Plaintiff needed to alternate sitting and standing throughout the day, she would still be able to perform the occupation of surveillance system monitor. *Id.* Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that

Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff's father requested review and submitted additional evidence. *Id*. at 9-14. The Appeals Council denied the request for review on September 14, 2015. *Id*. at 1-7. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on November 16, 2015. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ (1) failed to adequately develop the record; (2) did not base his assessment of Plaintiff's back impairment on the correct legal standard; (3) erred by not completing a new mental RFC; (4) erred in granting great weight to Dr. Howard Horsley's opinions; (5) failed to evaluate the impact of Plaintiff's obesity; (6) failed to consider the side effects of Plaintiff's medications; (7) erred in his evaluation of the statements from Plaintiff's parents; (8) based his credibility evaluation on the wrong standard; and (9) based Plaintiff's insured status on the wrong legal standard. None of these arguments warrant remand.

**1.    Failure to Develop the Record**

Plaintiff first asserts that the ALJ erred in failing to further develop the record. *See* Doc. 21 at 6-9. As the court understands her argument,[5] Plaintiff contends that the ALJ should have ordered a consultative examination to make up for a two-year gap in her medical records. This argument is not well taken.

An ALJ has broad latitude in ordering consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for the proper resolution of a disability claim." *Id.* (internal

---

[5] To the extent that Plaintiff argues that the ALJ should have obtained more medical records, she has not identified any records that existed and that the ALJ failed to obtain.

8

citations omitted). Here, however, no such situation exists. Rather, the administrative record contains ample treatment records related to Plaintiff's back pain, and these records sufficiently explore Plaintiff's condition.

The ALJ specifically discussed the medical records as they related to Plaintiff's allegations of debilitating back pain and observed that — while Plaintiff rated her pain as a 7 out of 10 at the hearing — she often reported no pain to her providers. AR at 26. Plaintiff's arguments that these medical records mandate a difference conclusion (Doc. 21 at 8-9) are little more than thinly veiled requests for this court to reweigh the evidence, which it cannot do. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo.'" (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty*, 515 F.3d at 1071).

2. **Plaintiff's Back Impairment**

In her second argument, Plaintiff seems to argue that the ALJ's RFC was not supported by substantial evidence.[6] Specifically, Plaintiff argues that the ALJ did not discuss specific

---

[6] As Defendant correctly observes, Plaintiff starts this particular section by describing the ALJ's step-three conclusions that none of Plaintiff's impairments met or medically equaled a listed impairment. She then states the law regarding substantial evidence; however, Plaintiff never engages in any analysis about whether the step-three conclusions are supported by substantial evidence. To the extent that she challenges the ALJ's conclusions in this regard, the court will not consider such an undeveloped argument. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

medical facts regarding why her "back disorder is rated at a sedentary level." Doc. 21 at 10. The argument is problematic for two reasons.

First, Plaintiff's argument mischaracterizes the ALJ's opinion. The ALJ did not rate Plaintiff's back disorder as sedentary. Rather, after evaluating the evidence regarding *all* of Plaintiff's severe impairments, the ALJ concluded that Plaintiff was capable of performing sedentary work. AR at 24 ("claimant has the [RFC] to perform sedentary work").

Second, Plaintiff's argument is clearly contradicted by the record. The ALJ specifically cited and discussed many of Plaintiff's medical records and other evidence regarding her back problems. This evidence included the ALJ's observation that — despite testifying that her back impairment prevented her from sitting for more than 20 to 30 minutes at a time — Plaintiff sat throughout the administrative hearing, which was over one-hour long. *Id*. at 25. The ALJ also cited the medical evidence showing that Plaintiff's complaints of back pain were intermittent and that she often reported a pain level of zero. *Id*. at 26. The ALJ further noted that even during exacerbated periods of back pain, Plaintiff was nevertheless noted to have only mild tenderness, a negative straight leg raise test, normal lower extremity strength, and a normal gait. *Id*. Consequently, Plaintiff's argument — that the ALJ's analysis was conclusory and unsupported — must fail.

**3.   Mental RFC**

In his step-two analysis, the ALJ concluded that Plaintiff's medically determinable mental impairments of depression, anxiety, and panic disorder caused no more than minimal limitations and, therefore, were nonsevere. *Id*. at 20. In reaching this conclusion, the ALJ gave great weight to the opinions of State Agency Consultant Dr. Mary Ann Wharry. *Id*.  On appeal, Plaintiff contends that the ALJ erred in relying on Dr. Wharry's opinions. Plaintiff argues that

Dr. Wharry's opinions were "stale" because they had been rendered without the benefit of more recent medical evidence from Metro Community Provider Network. Doc. 21 at 11. This argument is not persuasive.

As Defendant correctly observes, Plaintiff's argument is not well developed. Plaintiff argues that the recent medical evidence "reveals her mental impairments are also severe and form new combinations of impairments." Doc. 21 at 12. Plaintiff does not specify which records she is relying on, nor does she offer any explanation to support this contention. Thus, this argument amounts to little more than a conclusory assertion of error. *See Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."); *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 1999) (declining to address arguments where claimant "failed to support [her] contention with any developed argumentation").

However, even if this argument were properly developed, there is no cause for remand. Here, the ALJ found that Dr. Wharry's opinion was consistent with Plaintiff's mental health treatment records. AR at 21. Dr. Wharry's opinion squares with records showing that Plaintiff's mental impairments did not significantly impact her activities of daily living, caused only mild difficulties with social functioning, and caused only mild difficulties with concentration, persistence, or pace. *See Id*. at 328 ("Mood was euthymic. Affect was normal"), 334 ("Behavior demonstrated no abnormalities . . . No thought disorder was noted . . . Thought content revealed no impairment."), 340-44 (reporting that medication is helping with panic attacks), 381 ("Psych: Normal"), 383 (noting that her anxiety was well controlled and panic attacks were occurring rarely). Furthermore, the ALJ thoroughly reviewed the later medical records and concluded that nothing supported the severity advocated by Plaintiff. *Id*. at 22. The ALJ specifically noted that

Plaintiff had some increase in panic attacks, but also observed that her mental status findings were benign. *Id*. (citing AR at 419-20, 426). As the ALJ observed, these records showed intermittent increases in anxiety symptoms, but generally good control with medication adjustments. *Id*. Thus, nothing in these later records represents a material change in Plaintiff's condition that would render Dr. Wharry's opinions stale. The court cannot conclude that the ALJ lacked evidence in weighing Dr. Wharry's opinions as he did. *See Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (substantial evidence supported ALJ's decision to afford significant weight to nontreating agency physician).

### 4.     Dr. Horsley's Opinions

Plaintiff also contends that the ALJ erred in assigning great weight to Dr. Horsley's opinion because Dr. Horsley's opinion was allegedly incomplete. Doc. 21 at 12-14. Specifically, Plaintiff argues that Dr. Horsley did not comply with the directives of the Commissioner's Programs Operations Manual Systems ("POMS"). *Id*. at 12-13. The court is not persuaded.

"An agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law." *Aragon v. United States*, 146 F.3d 819, 824-25 (10th Cir. 1998); *see also Schweiker v. Hansen,* 450 U.S. 785, 789 (1981) (per curiam) (ruling a Social Security Claims Manual not binding on the government); *Brooks v. Apfel*, 5 F. App'x 560, 561 (8th Cir. 2001) ("We reject [Plaintiff's] contention that specific sections of the Commissioner's Programs Operations Manual Systems establish his disability: the manual is not legally binding on the Commissioner."). Although the provisions cited by Plaintiff offer guidance on completing Physical RFC assessment forms, nothing in these guidelines acts as a binding prerequisite to an

ALJ's consideration of the medical consultant's assessment.[7] *See* POMS DI 24510.005; 24510.050; 24515.003.

Rather, when considering the opinions of a medical source — including non-treating sources — an ALJ must use the factors set forth in 20 C.F.R. § 404.1527. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p); *see also* Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006). Here, the ALJ specifically concluded that Dr. Horsely's opinions were consistent with the other medical evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Tellingly, Plaintiff has not pointed to any evidence in the record that would necessitate a different conclusion with regard to Dr. Horsley's physical RFC.[8] At its core, Plaintiff's contention, like many of her other arguments, is merely a request to reweigh this evidence. The court will not do so. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. *Id*. Thus, the court concludes that the ALJ did not err in his evaluation of Dr. Horsley's opinion.[9]

---

[7] The court notes that POMS 24510.005 states that the medical consultant should cite specific medical and nonmedical facts that support his or her conclusions. Here, Dr. Horsely did, in fact, do just that. In the RFC, Dr. Horsely cites the medical facts of Plaintiff's kyphosis and mild scoliosis, chronic back pain, asthma, anxiety and depression, and hypertension as support for his conclusions regarding her RFC. AR at 435. Defendant correctly notes that the POMS provisions do not require a medical consultant to identify and describe each medical report that he or she relied upon.

[8] Plaintiff also faults Dr. Horsely for failing to address her mental impairment. Doc. 21 at 12. However, as Defendant correctly argues, Dr. Horsely's assessment was a *physical* RFC, not a mental RFC. Rightfully, Plaintiff seems to abandon this argument in her Reply. *See* Doc. 27.

[9] The remainder of Plaintiff's arguments regarding the VE's testimony is conditioned on the ALJ's error in evaluating Dr. Horsley's opinions. Doc. 21 at 13-14. As this court has found no error in the ALJ's analysis of the medical evidence, it need not address the Plaintiff's arguments regarding the VE's testimony.

### 5. Plaintiff's Obesity

In her fifth argument, Plaintiff contends that the ALJ failed to evaluate the impact of Plaintiff's obesity on her functioning. Doc. 21 at 14-15. This argument is belied by the record. Contrary to Plaintiff's representations in her Opening Brief, at step-two the ALJ specifically concluded that Plaintiff's obesity was a severe impairment. AR at 20. Further, in his discussion of the RFC, the ALJ explicitly concluded that Plaintiff's combination of impairments, including her obesity, could be expected to limit her to sedentary work. *Id.* at 27. Although Plaintiff argues that her combined impairments should have resulted in a finding of disabled, as opposed to sedentary, this is simply an impermissible request to reweigh evidence.[10]

Furthermore, to the extent that Plaintiff contends the ALJ should have ordered a consultative examination to evaluate the combined effect of Plaintiff's obesity and other maladies, the court is not persuaded. Other than merely citing to her medical records, Plaintiff has not explained why any of these records were inconclusive or insufficient to explore her conditions. *Hawkins*, 113 F.3d at 1166. Quite the opposite, the ALJ thoroughly discussed the medical records and what they revealed about Plaintiff's capabilities.

### 6. Side Effects of Medication

Plaintiff contends that the ALJ erred in failing to consider the side effects of her medications. Plaintiff alleges that during the administrative hearing, she specifically testified that her anxiety medications made her nervous, sleepy, and irritable. The court perceives no reversible error.

---

[10] Plaintiff's arguments also seem to implicate the ALJ's conclusion at step three that Plaintiff's combination of impairments did not meet or medically equal a listing. Doc. 21 at 14. However, this argument is not fully developed. Indeed, Plaintiff confusingly seems to conflate several of the steps and fails to engage in any true analysis regarding step three. Thus, the court will not undertake to analyze any purported errors.

As an initial matter, the court agrees with Defendant that Plaintiff's Opening Brief mischaracterizes the nature of her testimony during the hearing. Plaintiff did not, in fact, testify that her medications made her nervous, sleepy, and irritable. Rather, she attributed those symptoms to her panic attacks. AR at 43-47. Instead, it was Plaintiff's representative who implied that Plaintiff's medications had side effects. *Id.* at 67.

Further, Plaintiff's medical records do not support her contentions of disabling side effects. In 2007, Plaintiff reported that her prescription for Paxil made her jittery and gave her insomnia. *Id.* at 338. Consequently, her medication was changed to Fluoxetine, which Plaintiff reported as helping her achieve better control of her symptoms. She denied having any side effects on Fluoxetine. *Id.* at 340, 342, 343, 344, 383. In addition, when Plaintiff complained that she experienced side effect from Paxil 20mg and got little relief from Paxil 10mg, her medical provider prescribed her Paxil 15mg. *Id.* at 418, 422. Plaintiff has not cited any evidence that she experiences side effects from the new dosage. *See Id.* at 422-33, 258. Consequently, any failure on the part of the ALJ to discuss these side effects did not affect the outcome of this case.[11] *See Keyes-Zachary*, 695 F.3d at 1173 (ALJ's failure to address the side effects of claimant's medication was harmless where the claimant had discontinued the medication, and the discontinuation of the medication had not adversely affected her ability to work).

### 7.   Other Source Information

Plaintiff's father and mother both submitted statements regarding Plaintiff's impairments. AR at 261-63 (mother's letter), 264-70 (representative brief written by father). In his evaluation, the ALJ concluded that these statements were not entitled to significant weight because they were not consistent with the other evidence in the record, and also because neither parent was a

---

[11] Moreover, even if this court were to accept, *arguendo*, Plaintiff's representations about her side effects, remand would not be warranted. As the court has discussed throughout this opinion, the record contains substantial evidence to support the ALJ's ultimate conclusions.

medically trained professional who had seen Plaintiff in a professional capacity. *Id*. at 27. On appeal, Plaintiff contends that the ALJ did not weigh her parents' statements correctly. Doc. 21 at 17-19. The court disagrees.

When evaluating "other source" evidence, the ALJ may use the same factors applicable to evaluating medical sources, such as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other facts that tend to support or refute the evidence." SSR 06-3p, 2006 WL 2329939, at *6 (factors for weighing medical opinions may also be used to weigh opinions of parents and others who have not seen the claimant in a professional capacity). Here, the ALJ evaluated the letters from Plaintiff's parents using these precise factors. The ALJ observed that, importantly, the statements from Plaintiff's parents were not consistent with the preponderance of the evidence and the opinions of Plaintiff's medical providers. AR at 27. The level of functional limitation suggested in their letters was simply not supported by the medical evidence. *Id*. The ALJ also noted that Plaintiff's parents were not trained to make "observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual mood or mannerisms." *Id*. Based on this, the ALJ concluded that their opinions should be given less weight than the medical sources. These were valid reasons, supported by record evidence; thus, the court cannot conclude that the ALJ erred in assigning these letters little weight. *Wall*, 561 F.3d at 1064 n.22 (concluding that the other anecdotal evidence from individuals who had neither a treating relationship with the Claimant nor any medical expertise was not "significantly probative"); *see also* 20 C.F.R. § 404.1527(c)(4) (opinions which are inconsistent with substantial evidence of record merit less weight).

Furthermore, the court agrees with the Commissioner that the statements from Plaintiff's parents were largely duplicative of Plaintiff's testimony during the hearing, which the ALJ discussed and found not credible. Furthermore, much of Mr. McKellar's representative brief simply recounted the medical records that were admitted as evidence. Thus, there is no cause for remand. *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (concluding that any error in failing to discuss husband's letter was harmless because the letter was cumulative of the plaintiff's hearing testimony).

### 8.     Credibility Assessment

Plaintiff next contends that the ALJ's analysis of her credibility was based on the wrong legal standard and was not supported by substantial evidence. This argument is not persuasive.

As to her complaints of frequent pain, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible" to the extent that they were inconsistent with the RFC. *See* AR at 25. "'To be disabling, pain must be so severe, by itself of in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted). To determine whether pain is disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

In evaluating a claimant's credibility, the ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).  The ALJ is not required to discuss these factor-by-factor. *See Qualls*, 206 F.3d at 1372 (Tenth Circuit precedent does not require a formalistic factor-by-factor recitation). The credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In this instance, the ALJ set forth the specific evidence he relied on in determining that Plaintiff's allegations of disabling pain were not credible. Specifically, the ALJ found that despite her allegations of disabling asthma, Plaintiff's medical records showed that her asthma was relatively well-controlled, and that her medical providers described her asthma as stable with medication. AR at 25-26, 327, 329, 332, 338-39, 340-42, 380. In addition, the ALJ found that (1) Plaintiff had described her pain as mostly a dull ache to her physicians; (2) she often described her back pain as being a zero out of ten or that she had no pain at all; and (3) her complaints were not supported by imaging, which only showed mild scoliosis. *Id.* at 25-26, 328, 326-403, 406-33. The ALJ also observed that Plaintiff's complaints of extreme menstrual camping were not supported by her statements to her medical providers. *Id.* at 26, 330-35, 354, 358-59, 361-62, 367-69, 374, 378-79, 454-56. In light of this, the court concludes that the ALJ's credibility assessment was supported by substantial evidence and finds no cause for reversal.

### 9.     "Insured Status"

In his opinion, the ALJ's stated that "[t]he claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through January 1, 2001. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." AR at 18. In this case, however, Plaintiff applied for disabled adult child benefits, which requires her to establish, *inter alia*, that she was "18 years old or older and [had] a disability that began before [she] became 22 years old." 20 C.R.F. § 404.350. Plaintiff turned 22 years old on January 1, 2009, and she alleged an onset date of January 2, 2005 (the day after her 18th birthday). Thus, as the Commissioner concedes, the date of January 1, 2001, has no apparent relationship to the facts of this case.

Nevertheless, the court rejects Plaintiff's argument that this error mandates reversal. Reading the decision as a whole convinces the court that the ALJ's reference to January 1, 2001, was nothing more than a scrivener's error. Here, the ALJ considered all of the evidence provided, including those records from Plaintiff's early childhood and those that post-dated January 1, 2001. AR at 25-27. In addition, later in his opinion, the ALJ correctly noted that Plaintiff was 18 years old on the alleged disability onset date — as opposed to 14 years old, the age she would have been on January 1, 2001. *Id*. at 27. Finally, in the ALJ's ultimate conclusion, he found that Plaintiff had not been under a disability from January 2, 2005 through the date of his opinion. *Id*. at 28. Indeed, the date of January 1, 2001, is again never mentioned in the opinion. The ALJ's error could not have had any — let alone substantial — effect on his analysis and, therefore, remand is not warranted. *See Keyes-Zachary*, 695 F.3d at (scrivener's error was harmless where the error went to chronology and not substance of medical visit); *Block v. Astrue*,

506 F. App'x 764 (10th Cir. 2012) (no remand was warranted where the stated error was clearly typographical).

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. McKellar was not disabled within the meaning of Titles II and XVI of the Social Security Act and, therefore, not eligible to receive Disabled Adult Child Benefits or Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 15th day of March, 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge